IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

**ALLINE HARRIS,**

    **Plaintiff,**

v.                                                    **Case No. 6:10-CV-2122-RDP**

**MICHAEL J. ASTRUE**,
**Commissioner of Social Security**,

    **Defendant.**

## MEMORANDUM OF DECISION

Plaintiff Alline Harris brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Title XVI Supplemental Security Income ("SSI") benefits. *See* 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be reversed and remanded for further proceedings.

### I. Proceedings Below

Plaintiff filed an application for SSI, dated June 24, 2002. (Tr. 51-54). Plaintiff's application was denied by the Social Security Administration in its decision dated November 1, 2004. (Tr. 15-22). After exhausting her administrative remedies, Plaintiff timely filed an appeal of the ALJ's decision in this court. On March 27, 2008, this case was remanded the case back to the Administrative Law Judge ("ALJ") with instructions to redetermine Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 237-41). A remand hearing was held on May 21, 2009 in Florence, Alabama. (Tr. 253). The ALJ issued a partially favorable decision on June 24, 2009, finding Plaintiff disabled as of December 24, 2007, but not prior to that date. (Tr. 226-36).

Plaintiff requested review of the ALJ's June 24, 2009 decision (Tr. 222), but her request was denied by the Appeals Council on July 23, 2010, thereby making that decision the final decision of the Commissioner, and a proper subject of this court's review.  42 U.S.C. § 405(g).

At the time of the hearing and decision, Plaintiff was 51 years old and had completed an eighth grade education. (Tr. 77, 326).  Plaintiff had previously worked as a shearer, laborer, sewing machine operator, and fast food cashier.  (Tr. 98, 149).  Plaintiff alleges disability due to ovarian cysts, borderline intelligence, depression, and anxiety.  (Tr. 72, 77, 92, 108, 117, 331, 335).  Plaintiff also complains of pain in her stomach, back, legs, and hips. (Tr. 330, 331).  Records show that Plaintiff has visited multiple medical facilities in connection with that pain. (Tr. 273, 281, 293).

Plaintiff's mental status was examined by three psychologists. Dr. Alwyn S. Whitehead, Jr., a licensed clinical psychologist, examined Plaintiff on August 28, 2002 and asserted that Plaintiff's memory, cognitive skills, and ability to concentrate demonstrated some impairment. (Tr. 151).  Although Plaintiff demonstrated low average to borderline intellectual functioning, Dr. Whitehead opined that Plaintiff possessed the ability to function in an age-appropriate manner communicatively, socially, and adaptively.  (Tr. 151).  He also noted that Plaintiff's cognitive shortcomings did not seem to affect her adaptive functioning.  (Tr. 151).  Dr. Whitehead also noted that Plaintiff was able to dress herself, bathe, groom, shop, cook for herself, drive without assistance, manage her finances, and live independently.  (Tr. 151).  He further concluded that Plaintiff's cognitive deficits and possible mood disorder should not affect her ability to respond appropriately to supervision, coworkers, and work pressures in a work environment. (Tr. 152).

Dr. Jerry Gragg, another licensed clinical psychologist, examined Plaintiff on August 29, 2008. (Tr. 296). Dr. Gragg stated that there was evidence that Plaintiff "was experiencing a significant degree of depression" and administered the Wechsler Adult Intelligence Scale-III test (WAIS-III). (Tr. 297). Plaintiff received a full scale IQ score of 63, verbal IQ score of 61, and a performance IQ score of 72, which indicated that she was functioning in the mildly mentally retarded range of general intelligence. (Tr. 298). Dr. Gragg repeatedly stated that there is a "strong likelihood that these test scores are an underestimation of her actual level of intellectual functioning secondary to depressive mood" and concluded that Plaintiff could not formally be diagnosed with mental retardation. (Tr. 298).

Plaintiff was referred by her attorney to Dr. John R. Goff for a psychological evaluation and was seen on December 18, 2008. (Tr. 312). Dr. Goff administered the fourth edition of the Wechsler Adult Intelligence Scale (WAIS-IV), and Plaintiff obtained a full scale IQ score of 65. (Tr. 314). Dr. Goff classified Plaintiff's score as "within the mildly retarded range of psychometric intelligence." (Tr. 314). According to Dr. Goff, Plaintiff was "functionally illiterate" and "dependent upon her family for matters of judgment and interactions with the community." (Tr. 315-A). Dr. Goff also noted that Plaintiff has a history of early school departure and grade repetition. (Tr. 315-A). In an addendum to his psychological evaluation of Plaintiff, Dr. Goff stated that, in his opinion, Dr. Gragg's conclusion that Plaintiff's low IQ may be due to depression is incorrect. (Tr. 316-B). Dr. Goff concluded that "the most likely explanation for adaptive skills deficits in combination with low IQ scores in the absence of any other likely etiology is that the claimant is mildly mentally retarded, and in my view this lady is mildly mentally retarded." (Tr. 316-B).

## II.  ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1 *et seq.* First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engaged in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability.  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1524, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. §

404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2002, the alleged onset date of her disability. Additionally, the ALJ found that Plaintiff (1) has had major depressive disorder, chronic obstructive pulmonary disorder, limited intellectual functioning but is not mentally retarded, (2) did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 416.920(d) from April 15, 2002 to December 24, 2007, and (3) was not disabled prior to December 24, 2007, but became disabled on that date and has continued to be disabled through the date of his decision, dated June 24, 2009. (Tr. 228, 231, 234, 236). After consideration of the record, the ALJ determined that beginning on December 24, 2007, Plaintiff has had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. § 416.967(a) (Tr. 234). The ALJ found that during the time period of December 24, 2007 to June 24, 2009 (the date of his decision), there was not a significant number of jobs that Plaintiff could perform considering her age, education, work experience, and RFC (Tr. 235); however, the ALJ further determined that considering Plaintiff's age, education, work experience, and RFC, there were in fact a significant number of jobs in the national economy that Plaintiff could have performed prior to December 24, 2007. (Tr. 235). Accordingly, the ALJ issued a partially favorable decision concluding that Plaintiff was not disabled prior to December 24, 2007, but became disabled on that date and has continued to be disabled through June 24, 2009. (Tr. 236).

### III.  Plaintiff's Argument for Reversal

Plaintiff presents several arguments for reversing the decision of the ALJ.  First, Plaintiff contends that the ALJ failed to properly evaluate and consider §§ 12.05(c) and 12.05(d) in his decision.  (Pl.'s Reply 1, 2).  Specifically, Plaintiff asserts that because of the ALJ's failure to consider evidence of an IQ test, 12.05(c) and 12.05(d) cannot even be evaluated.  (Pl.'s Reply 2). Second, Plaintiff contends that the ALJ "erred by not following the legal standard adopted by the Eleventh Circuit in *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001) and treating Plaintiff as being mentally retarded her entire life." (Pl.'s Reply 3). According to Plaintiff, the *Hodges* case nullified the requirement set out in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 § 12.05 requiring her to present evidence that she had "subaverage general intellectual functioning with deficits in adaptive functioning" before age 22.  (Pl.'s Br. 8).  Third, Plaintiff insists that the ALJ improperly disregarded the IQ tests administered by Dr. Goff and Dr. Gragg and there was sufficient evidence under *Hodges* to show that she had been mentally retarded for her entire life. (Pl.'s Reply 4).

Plaintiff's attorney hired Dr. Goff to administer an IQ test to Plaintiff and provide his medical opinion concerning her mental state.  Plaintiff argues that her attorney's hiring of Dr. Goff was not an adequate reason for the ALJ to discount Dr. Goff's opinion.  (Pl.'s Br. 19). Plaintiff asserts that the ALJ's rejection of evidence from Dr. Goff's examination is evidence of bias on his part.  (Pl.'s Br. 21).  Plaintiff contends that "the ALJ's decision to immediately reject Dr. John Goff's original opinion and the addendum to his opinion solely on the basis that Claimant hired a medical expert to meet her burden of proof . . . runs counter to the Claimant's right to have a fair and impartial hearing free from any bias." (Pl.'s Br. 22).

Case 6:10-cv-02122-RDP   Document 16   Filed 08/18/11   Page 7 of 13

**IV.  Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  see 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

7

V.  **Discussion**

A. **The ALJ Properly Evaluated Plaintiff's Mental Retardation Claims.**

Plaintiff argues that the ALJ failed to properly evaluate and consider § 12.05 under the standard set forth in *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001). (Pl.'s Br. 2, 3). Plaintiff insists that the case should be remanded for the ALJ to consider her IQ scores of 63 and 65 in his evaluation of §§ 12.05(c) and 12.05(d). (Pl.'s Reply 2). This argument fails because the ALJ explicitly recognized Plaintiff's IQ scores and cited evidence from the record demonstrating that the IQ scores were inconsistent with Plaintiff's actual intellectual functioning.

A claimant generally meets the criteria for presumptive disability under § 12.05(c) by submitting a valid verbal, performance, or full scale IQ score between 60 and 70, along with evidence of an additional mental or physical impairment that has more than a minimal effect on the claimant's ability to perform basic work activities. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Section 12.05(d) is met by showing a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpart P, Appendix 1 § 12.05(d). The Eleventh Circuit has made it clear that even "a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Burt v. Barnhart*, 151 Fed Appx. 817 (11th Cir. 2005) (citing *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)).

In the present case, the ALJ noted that Plaintiff "enjoyed watching TV, listening to the radio, reading books, and taking walks." (Tr. 229). The ALJ also recognized that Plaintiff was able to prepare meals, sweep, dust, bathe herself, dress and groom herself without assistance, manage her finances and live independently. (Tr. 229). Plaintiff "appeared capable of understanding, carrying out, and remembering simple instructions," and her cognitive defects did not appear to have a major effect on her adaptive functioning. (Tr. 229). The ALJ stated that Plaintiff was deemed capable of "responding appropriately to supervision, coworkers, and work pressures in a work setting should she choose to do so." (Tr. 229). Under *Lowery*, and in light of the ALJ's extensive discussion of Plaintiff's daily routine, the finding that Plaintiff's IQ scores are inconsistent with her actual intellectual functioning is supported by substantial evidence.

Plaintiff argues that the ALJ "could not properly evaluate listings 12.05(c) and 12.05(d) without having evidence of a valid IQ test." (Pl.'s Reply 1, 2). Plaintiff further contends that "the ALJ's evaluation is odd and in error because he refused to consider even the commissioner's IQ test through Dr. Jerry Gragg." (Pl.'s Reply 2). The court is not convinced. First, Plaintiff fails to recognize that IQ scores between 60 and 70 are not necessarily conclusive of mental retardation when evidence on the record demonstrates otherwise. *See Lowery*, 979 F.2d 835, 837. Second, contrary to Plaintiff's contentions, the ALJ specifically addressed her IQ score results from the test administered by Dr. Gragg and concluded that the scores were not indicative of her intellectual functioning. (Tr. 230). Dr. Gragg explicitly noted that Plaintiff's IQ scores "appeared to be an underestimate of her true intellectual functioning, given her mood" and refused to formally diagnose Plaintiff as mentally retarded. (Tr. 230, 298). Thus, here the

doctor administering the IQ test refused to classify Plaintiff as mentally retarded; accordingly, the ALJ did not err in the handling of that evidence.[1]

**B.     The ALJ Failed to Offer Sufficient Reasons for His Treatment of Dr. Goff's Opinion.**

Plaintiff contends that the ALJ's decision to "immediately reject" Dr. Goff's opinion was improper and "runs counter to [her] right to have a fair and impartial hearing free from any bias." (Pl.'s Br. 22). After reviewing the record, the court concludes that the ALJ improperly discounted Dr. Goff's opinion.

The ALJ may reject the opinion of any health care professional when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why. *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987). The Eleventh Circuit has stated that when an ALJ fails to state with "at least some particularity the grounds for his decision," they will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In this case, the ALJ did not consistently articulate how much weight he afforded the opinion of Dr. Goff. (Tr. 233, 234). He also failed to state whether Dr. Goff's opinion was contrary to the evidence in the record. (Tr. 233, 234). The mere fact that Dr. Goff's opinion was

---

[1] Plaintiff's argument that the ALJ failed to apply the standard of *Hodges v. Barnhart*, 276 F.3d 1265-66 (11th Cir. 2001) is also off the mark because the ALJ's rejection of her IQ scores as conclusive evidence of mental retardation is supported by substantial evidence. In *Hodges,* the court concluded that because "there is a presumption that mental retardation is a condition that remains constant throughout life," claimants are not required to present evidence of defects in adaptive functioning prior to age twenty-two when they have already presented evidence of low IQ test scores after the age of twenty-two. *Id.* at 1266. Referencing the *Hodges* holding does Plaintiff no good because the ALJ demonstrated that her IQ test results were not consistent with other evidence on the record.

solicited by Plaintiff's attorney is not sufficient to justify the ALJ's treatment of it. (Tr. 233, 234). Indeed, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). For these reasons, the court cannot conclude that the ALJ's findings regarding Dr. Goff's opinion was supported by substantial evidence. The ALJ must specifically and consistently state how much weight he attaches to the opinion of Dr. Goff and set forth reasons for doing so. Additionally, the ALJ must specifically consider the results of the IQ test performed by Dr. Goff and state his reasons for accepting or rejecting it, while following the standard set forth in *Lowery*.

As it is emphatically not the court's duty to reweigh the evidence when reviewing the ALJ's opinion, *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), a remand on this issue is appropriate. On remand, the ALJ must properly assess Dr. Goff's opinion.

**C.     Plaintiff's Contentions That She Did Not Receive a Fair and Impartial Hearing Due to the ALJ's Bias Are Unwarranted and Therefore Fail.**

Plaintiff's attempt to show that she did not receive a fair and impartial hearing due to the ALJ's alleged bias (Pl.'s Br. 21) is not supported by the record. Plaintiff highlights the ALJ's statement on the record, "people go where they are paid … if they're paid sometimes it biases their opinion," to show that the ALJ was biased. (Pl.'s Br. 21). As Plaintiff and the Commissioner recognize, ALJs are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). Although this presumption certainly can be overcome by showing a conflict of interest or some other specific reason for disqualification, *id.*, the ALJ's statement referencing the hiring of Dr. Goff is not sufficient to overcome that presumption. The fact that the ALJ failed to elaborate on his reasons for discounting the opinion of Dr. Goff requires a remand, but

there is no indication of bias or prejudice in the record.  The court concludes that Plaintiff has not demonstrated that the ALJ was biased or that Plaintiff did not receive a fair and impartial hearing.

### VI.  Conclusion

For the reasons set forth above, the decision of the ALJ is due to be **REVERSED** and **REMANDED**.  An order reversing the decision of the Commissioner and remanding this matter for further proceedings will be entered contemporaneously with this Memorandum of Decision.

**DONE** and **ORDERED** this ___18th___ day of August, 2011.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE